72 P.3d 343

**STATE of Arizona, Appellee,**

v.

**Benjamin L. JOHNSON, Appellant.**

No. 1 CA–CR 01–0204.

Court of Appeals of Arizona.
Division 1, Department E.

June 17, 2003.

Terry Goddard, Arizona Attorney General, Phoenix, By Randall M. Howe, Chief Counsel, Criminal Appeals Section and Alan M. Amann, Assistant Attorney General, for Appellee.

Susan Sherwin, Office of the Legal Advocate, Phoenix, By Thomas J. Dennis, Deputy Legal Advocate, for Appellant.

## OPINION

GEMMILL, J.

¶1 Benjamin L. Johnson fired one round from his rifle, hitting a police officer. A jury convicted Johnson of aggravated assault for shooting a police officer. The same jury also found Johnson guilty of aggravated assault against several bystanders, but these verdicts were reversed on appeal. Johnson was retried on six counts of aggravated assault and convicted on five counts. Johnson now appeals from these convictions.

¶2 Over Johnson's objection, the trial court instructed the jury on transferred intent, permitting the State to argue that Johnson's intent to shoot the police officer could be transferred to serve as the intent for the assaults on the bystanders. Johnson argues on appeal that the court erred by instructing the jury on transferred intent. Because we conclude that the intent to shoot and cause injury or death cannot be transferred to provide the intent to place the bystanders in reasonable apprehension of imminent physical injury, we reverse Johnson's convictions of aggravated assault on the bystanders and remand for further proceedings.

## FACTS AND PROCEDURAL BACKGROUND

¶3 This court first reviewed the relevant facts of this case in *State v. Johnson*, 1 CA–CV 96–0931 (Ariz.Ct.App., Apr. 10, 1998). In that unpublished decision, the court summarized the facts as follows:

> Phoenix police officers Jeffrey D[1] and Robert H made a traffic stop in a residential Phoenix neighborhood during the evening of November 12, 1994. Onlookers from a nearby house gathered as the officers were speaking with the occupants of the automobile. Both the onlookers and the occupants of the vehicle were being cooperative. Without warning, [Johnson]—who was in a residential yard ap-

proximately 325 feet down the street—fired a shot from his scoped, 30.06 caliber rifle, striking Officer D in the back of his left leg and inflicting serious, permanent injuries.

The officers and bystanders did not see Johnson fire the shot and most of them were initially uncertain from what direction the shot was fired.

¶4 Johnson was convicted in the first trial on multiple counts. Another panel of this court affirmed Johnson's conviction for shooting Officer D but reversed (for a reason unrelated to this appeal) the six convictions for aggravated assault on bystanders. The assault conviction against Johnson for the shooting of Officer D was for that form of assault defined in Arizona Revised Statutes ("A.R.S.") section 13–1203(A)(1) (1989) as "[i]ntentionally, knowingly or recklessly causing any physical injury to another person." In contrast, the bystander assault charges against Johnson were based on the apprehension form of assault defined in A.R.S. § 13–1203(A)(2) (1989) as "[i]ntentionally placing another person in reasonable apprehension of imminent physical injury." This appeal arises from the retrial of the six bystander assault counts and Johnson's convictions on five of the counts.

¶5 At the retrial, Officers D and H testified about the shooting. Each of the bystanders also testified. Robert was the driver and Carlos and Francisco were passengers in the car that Officers D and H had stopped. Julia, who lived in a house on the corner of the intersection at which Officer D was shot, testified that she was inside the gate of her yard when she heard the gunshot. Ruben and Matthew were also near the intersection when they heard the gunshot.[2]

¶6 The term "intentionally" as used in A.R.S. § 13–1203(A)(2) describes a culpable mental state that "means, with respect to a result or to conduct described by a statute defining an offense, that a person's objective

---

1. To protect the privacy of the individuals involved, we use only the first initial of the officers' last names and only the first names of the other witnesses. These alterations are reflected in both quoted text and the body of this opinion.

2. Ruben acknowledged that he was drunk at the time and was not scared by the noise or concerned about being hit. The jury acquitted Johnson on the count pertaining to Ruben.

is to cause that result or to engage in that conduct." A.R.S. § 13–105(7)(a) (Supp.1993). The State had the burden at trial of proving that Johnson intended to place one or more victims in reasonable apprehension of imminent physical injury. *See State v. Salman,* 182 Ariz. 359, 362, 897 P.2d 661, 664 (App. 1994).

¶ 7 The State requested an instruction on transferred intent utilizing the language of A.R.S. § 13–203(B) (1989), quoted below in ¶ 13. The State's primary theory was that Johnson's intent in firing the shot that injured Officer D could be "transferred" to provide the requisite intent for assault on the bystanders. Johnson objected to the instruction. The court overruled Johnson's objection and explained, outside the presence of the jury, its view that

> the jurors could conclude that the shot was aimed at Officer D, or they could conclude the shot was aimed at Officer H and was an inaccurate shot and instead hit Officer D, or they could conclude that it was aimed at [Robert] and was an inaccurate shot and hit Officer D, or they could conclude maybe the shot was intended to hit the police car and just scare everybody. In all of those situations, if they conclude the *result of the shot, hitting somebody,* caused those standing around to be in reasonable apprehension of imminent physical injury, then the proper concept in that situation is transferred intent, and I think that would cover the situation.

¶ 8 The State began its closing argument to the jury by explaining how the evidence established the elements of the crimes in this case:

> The State has proven the charges in this case beyond a reasonable doubt, and this is how it was done: You received an instruction, or you will receive an instruction regarding, "Aggravated Assault," which means *intentionally placing another in reasonable apprehension of imminent physical

injury,* and that it's aggravated by the fact that a firearm was used.[3]

> In this case you also have an additional factor. You know from the evidence that Detective D was the one that was struck by the rifle round, not Julia, not Matthew, not Ruben, not Carlos, not Robert, and not Francisco, and neither was Officer H. None of them were struck by this rifle round. It was only Detective [D].[4] But you were also instructed—it's an instruction which I refer to as "transferred intent."

The prosecutor then proceeded to explain the doctrine of transferred intent, the language of § 13–203(B), and examples that the State believed permitted application of transferred intent. Regarding the statutory language, the State argued that under the facts of this case, both subsections of § 13–203(B) applied.

¶ 9 In its rebuttal closing, the State made the following argument:

> What could possibly be different or explain this conduct of shooting across the street, shooting a police officer? The intent, clearly, was to shoot a police officer or shoot somebody. This wasn't a disorderly conduct of something, just cranking off a round in the air. This bullet was fired at human beings.

> Now, which one is really not relevant under the facts of this case and the instructions of law[.] I would submit to you that, based on the evidence, "it's 6 inches down and 6 inches to the left" does not explain, you know, having aimed at somebody else . . . .[5]

> But even if it did, even if you were to conclude that, "Hey he meant to hit the car; he meant to hit Robert, he meant to hit [Officer] H, or he meant to hit somebody behind them," it doesn't matter, because of transferred intent.

> But one thing you can take away from this case: If nothing else, clearly, this person,

---

**3.** *See* A.R.S. § 13–1204(A)(2) (Supp.1993).

**4.** The transcript states, "Detective H," but also includes a "sic" notation. We presume the prosecutor meant to say, "Detective D" because Officer H was not shot.

**5.** The phrase "it's 6 inches down and 6 inches to the left" referred to the firearms expert's testimony regarding the reliable accuracy of the scope and rifle used by Johnson.

the defendant, intended to shoot at those people or in their general vicinity. And that is enough of an intent, because of the transferred intent rule, to find him guilty for the consequences. . . .

When the defendant fired at officer D, he victimized these six individuals under the Transferred Intent Rule. He's liable for their fears.

The jury convicted Johnson on five of the six counts at issue. This timely appeal followed.

## ANALYSIS

¶ 10 We review the court's decision to provide a particular jury instruction under an abuse of discretion standard. *State v. Hurley*, 197 Ariz. 400, 402, ¶ 9, 4 P.3d 455, 457 (App.2000). A party is entitled to an instruction on any theory reasonably supported by the evidence. *State v. Tschilar*, 200 Ariz. 427, 436, ¶ 36, 27 P.3d 331, 340 (App.2001). We will reverse a conviction when the instructions, taken as a whole, may have misled the jury. *See State v. Johnson*, 155 Ariz. 23, 26, 745 P.2d 81, 84 (1987) ("Where there is the possibility that the defendant was convicted on deficient jury instructions, the conviction must be reversed."); *State v. Schad*, 142 Ariz. 619, 621, 691 P.2d 710, 712 (1984) (possibility that jury convicted defendant of first degree murder based on deficient instruction constitutes fundamental error); *see also State v. Hunter*, 136 Ariz. 45, 50, 664 P.2d 195, 200 (1983) (citing *State v. Curry*, 127 Ariz. 1, 2–3, 617 P.2d 785, 786–87 (App.1980), for the proposition that an "instruction that is correct statement of law but is incomplete is improper").

¶ 11 "[A] trial court has a duty to instruct on the law relating to the facts of the case when the matter is vital to a proper consideration of the evidence, even if not requested by the defense and failure to do so constitutes fundamental error." *State v. Avila*, 147 Ariz. 330, 337, 710 P.2d 440, 447 (1985). Additionally, in evaluating the jury instructions, we consider the instructions in context and in conjunction with the closing arguments of counsel. *State v. Bruggeman*, 161 Ariz. 508, 510, 779 P.2d 823, 825 (App.1989)(citing *State v. Rodriguez*, 114 Ariz. 331, 560 P.2d 1238 (1977)).

### Transferred Intent: A.R.S. § 13–203(B)

¶ 12 The origin of the doctrine of transferred intent has been traced to the medieval criminal law of England. Peter H. Mixon, *Application of Transferred Intent to Cases of Intentional Infliction of Emotional Distress*, 15 Pac. L.J. 147, 147 (1983); *see also People v. Scott*, 14 Cal.4th 544, 59 Cal.Rptr.2d 178, 927 P.2d 288, 291 (1996). In *The Queen v. Saunders & Archer*, 2 Plowd. 473, 474, 75 Eng. Rptr. 706, 707 (1576), defendant John Saunders intended to poison his wife so he could marry another woman. He placed poison in an apple and gave it to her. Sadly, she gave part of it to their young daughter who ate it and died. *Id.* Saunders did not intend to kill his daughter, but he was nonetheless guilty of her murder. *Id.* at 474, 75 Eng. Rptr. at 707–08. The court "transferred" his intent to kill his wife to the death of his daughter. *Id.* The doctrine of transferred intent became part of the common law in many American jurisdictions and now exists in various forms in both criminal and tort law. *See generally* W. Page Keeton et al., *Prosser and Keeton on Torts* 37–38 (5th ed.1984) (discussing development of transferred intent in criminal and tort contexts).

¶ 13 Unlike some jurisdictions, Arizona has codified its doctrine of transferred intent. *State v. Rodriguez–Gonzales*, 164 Ariz. 1, 2, 790 P.2d 287, 288 (App.1990). The challenged instruction in this case mirrored the language of § 13–203(B), which provides:

> If intentionally causing a particular result is an element of an offense, and the actual result is not within the intention or contemplation of the person, that element is established if
>
> 1. The actual result differs from that intended or contemplated only in the respect that a different person or different property is injured or affected or that the injury or harm intended or contemplated would have been more serious or extensive than that caused; or
>
> 2. The actual result involves similar injury or harm as that intended or contemplated and occurs in a manner which the person knows or should know is rendered

substantially more probable by such person's conduct.

¶ 14 Courts in prior decisions have interpreted aspects of this statute. Noting that Arizona largely adopted its transferred intent statute from the Model Penal Code, the court in *Rodriguez–Gonzales* held that subsection (1) of the transferred intent statute

> deals with the situations in which the actual result differs from the result designed or contemplated *only in that* a different person or property was injured or affected, or in that the injury or harm designed or contemplated would have been more serious or extensive than that which actually occurred.

164 Ariz. at 2, 790 P.2d at 288 (quoting Model Penal Code § 2.03 cmt. at 260–61 (1985)) (emphasis added). Additionally, in *State v. Cantua–Ramirez*, 149 Ariz. 377, 380–81, 718 P.2d 1030, 1033–34 (App.1986), the court pointed out that while subsection (2) from Model Penal Code § 2.03 would apply when the actual result involves "the same kind" of injury or harm as that intended, our statute applies when the actual result involves "similar injury or harm" as that intended. *Compare* Model Penal Code § 2.03(2)(b) *with* A.R.S. § 13–203(B)(2). The *Cantua–Ramirez* court concluded that through this alteration, our legislature "intended to make Arizona's statute more flexible" than the Model Penal Code's standard. 149 Ariz. at 381, 718 P.2d at 1034.

¶ 15 Our analysis of the transferred intent statute is based *on its plain language* and Arizona judicial precedent. In order for the first clause of § 13–203(B)(1) to apply, the actual and intended victims may differ, but the actual and intended harms must be the same. Conversely, for the second clause of (B)(1) to apply, the actual and intended victims must be the same, but the harm can differ. This conclusion stems from the use of the word "only" preceding the word "or" that joins the two clauses. This logical structure creates an exclusive disjunction, allowing transferred intent under (B)(1) if only one of

the two components of the result (either the victim or the harm) differs, but not both. Section 13–203(B)(2), however, does not impose any limitations regarding the victims and requires only that the actual harm and intended harm be similar and foreseeable. With these principles in mind, we proceed to analyze whether any portion of § 13–203(B) applies to this case.

### Section 13–203(B)'s Applicability If Johnson Intended To Cause Apprehension

¶ 16 The State's primary theory at trial was that Johnson fired one shot from his rifle with the intent to hit Officer D or at least to hit a person. *See supra* ¶ 9. However, the State on appeal also claims that Johnson may have intended merely to scare one or more of the people at the scene.[6] Based on the instructions given and the verdicts rendered, we cannot determine whether the jury found that (1) Johnson intended *only* to frighten the officers or others at the scene or (2) Johnson intended both to shoot a person *and* to frighten one or more of the people present or (3) Johnson intended only to shoot a person and *not* to scare anyone.

¶ 17 Our concern in this case focuses on the third alternative: we cannot rule out that Johnson may have intended only to shoot Officer D and not to place Officer D or anyone else in apprehension. It cannot be presumed from the act of firing a shot at Officer D that Johnson also intended to scare Officer D or any of the bystanders. *See Sandstrom v. Montana*, 442 U.S. 510, 523–24, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) (jury instruction stating "the law presumes that a person intends the ordinary consequences of his voluntary acts" held to violate due process). While common sense suggests that a person who shoots at one person likely knows that bystanders will be frightened by the shot, the apprehension form of assault requires proof of *intentionally* placing a person in apprehension. *Knowingly* placing a per-

---

**6.** In this opinion, we may use "scare" or "frighten" as shorthand for a portion of the statutory language describing this form of assault: to "plac[e] another person in reasonable apprehension of imminent physical injury." By using

"scare" or "frighten" for convenience, we are not suggesting that being "scared" or "frightened" is necessarily the equivalent of being in "reasonable apprehension of imminent physical injury."

son in apprehension is a less culpable mental state and is not sufficient for this crime. *See* A.R.S. § 13–1203(A)(2); *see also Salman,* 182 Ariz. at 362, 897 P.2d at 664.[7]

¶ 18 If Johnson intended to scare at least one of these people, however, his intent to scare could be transferred under § 13–203(B) to support the crime of assault on the additional bystanders. The first clause of § 13–203(B)(1) would apply: the actual harm (a bystander's apprehension) was the same as the intended harm (Officer D's apprehension, for example), but the actual victim (a bystander) was different from the intended victim (Officer D).

¶ 19 The first clause of § 13–203(B)(1) is usually referred to as supporting transferred intent for the "bad aim" defendant who intends to commit a crime against one victim but completes the crime against an unintended victim.[8] Thus, when an assailant throws acid at one person and instead hits another, the statute will transfer the defendant's felonious intent towards his intended target to the actual victim and the criminality of his act toward the actual victim is the same as that directed toward the intended target. *State v. Gunter,* 132 Ariz. 64, 66–67, 643 P.2d 1034, 1036–37 (App.1982).

¶ 20 But liability under the first clause of § 13–203(B)(1) is not limited to those situations in which the defendant fails to complete his intended crime; the liability extends to all bystanders inflicted with the same harm. For example, in *Rodriguez–Gonzales,* the defendant returned to a bar from which he earlier had been ejected and fired four shots into the bar, intending to shoot the security guards. 164 Ariz. at 1, 790 P.2d at 287. His shots hit two security guards and a bystander. *Id.* Even though the defendant intended to shoot only the guards, he was convicted of attempted murder of all three actual victims. *Id.* His intent to shoot the guards was properly transferred to support the crime of attempted murder of the bystander. *Id.* at 3, 790 P.2d at 289. Thus, under § 13–203(B)(1), the fact that a defendant completes his intended crime will not prevent his liability for the same harm caused to unintended victims. *Id.* at 2, 790 P.2d at 288 ("Intent to murder is transferable to each unintended victim once there is an attempt to kill someone."); *see also State v. Henley,* 141 Ariz. 465, 467, 687 P.2d 1220, 1222 (1984) ("When the act of firing one bullet results in two persons being injured, the person firing the bullet is responsible for two separate and distinct injuries and therefore has committed two assaults. This is so even though he has only committed one act and may only have had one 'original' intent," citing A.R.S. § 13–203(B)(1)).

¶ 21 We therefore conclude that if the jury found that Johnson had intended to frighten Officer D or one or more of the other people at the scene, Johnson's intent to frighten could be transferred under § 13–203(B)(1) to support the assault counts involving the bystander victims. We reach a different conclusion, however, if Johnson intended only to shoot and hit Officer D (or anyone else at the scene) and did not intend to scare the officer or anyone else.

---

7. From the very act of shooting one of several people in close proximity to each other, jurors could permissibly infer that Johnson intended to place the bystanders in reasonable apprehension of imminent physical injury. *See Pima County Juv. Action No. J–78539–2,* 143 Ariz. 254, 256, 693 P.2d 909, 911 (1984) (juvenile's shots at police vehicle occupied by officer permitted inference that juvenile intended to place officer in reasonable apprehension of imminent physical injury even though juvenile claimed he intended only to shoot out the tires); *Salman,* 182 Ariz. at 362, 897 P.2d at 664 (defendant's intent to cause reasonable apprehension of imminent physical injury may be inferred from the evidence). *Compare State v. Rodriguez,* 114 Ariz. 331, 333, 560 P.2d 1238, 1240 (1977) ("The law in Arizona is that a specific intent to do an act may be inferred from the circumstances of the doing of the act itself.") *with State v. Lara,* 183 Ariz. 233, 235 n. 4, 902 P.2d 1337, 1339 n. 4 (1995) (distinguishing the permissible inference of intent from the unconstitutional presumption of intent addressed in *Sandstrom v. Montana* ). The State could have elected to prosecute these bystander assault charges without the use of transferred intent and may choose to do so on remand.

8. As Professors LaFave and Scott have stated: "Doubtless if *A* intends, by pointing an unloaded gun at *B,* to scare *B,* but *C,* who is in the vicinity of the place where the gun is aimed, is the one actually scared, *A* is guilty of assault on *C,* on the bad-aim principles ...." 2 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 7.16, at 316 n. 32 (1986).

### Section 13–203(B)'s Inapplicability If Johnson Intended Solely To Cause Injury Or Death

¶ 22 The State argued strenuously that Johnson intended to shoot Officer D or at least to shoot someone. *See supra* ¶ 9. The jury may have found, if properly instructed, that Johnson meant to shoot and hit a person (probably Officer D) but not to scare anyone. We hold that § 13–203(B) does not apply if Johnson intended solely to cause injury or death and not to frighten anyone.

¶ 23 Section 13–203(B)(1) will not apply if Johnson intended only to shoot and hit Officer D or some other person. Separating the two clauses of subsection (B)(1) reveals that intent may be transferred when

> [t]he actual result differs from that intended or contemplated only in the respect [first clause] that a different person or different property is injured or affected or [second clause] that the injury or harm intended or contemplated would have been more serious or extensive than that caused
>
> . . . .

Under the first clause of § 13–203(B)(1), the actual victims may differ from the intended victims, which fits this fact pattern, but the actual harm must be the same as the intended harm, which does not fit here. Physical injury and the apprehension of physical injury are different types of harm. One is physical while the other is mental or emotional. The second clause of § 13–203(B)(1) applies only when the intended victim is the actual victim but the intended harm differs from the actual harm by *degree*—in other words, when the defendant intended a more severe crime (murder) than actually occurred (physical injury). Here, if Johnson intended simply to shoot Officer D, the actual victims at issue may be the bystanders, but the intended victim was Officer D. Accordingly, because both the victims and the harms differ between the actual and intended results, we conclude that neither clause of § 13–203(B)(1) may be applied to transfer intent for the bystander assault charges if Johnson's intent was solely to shoot and hit a person.

¶ 24 Subsection 13–203(B)(2) is similarly not applicable when a person intends to shoot and hit someone but does not intend to frighten that person or anyone else. This subsection provides for transferring intent when

> [t]he actual result involves *similar injury or harm* as that intended or contemplated and occurs in a manner which the person knows or should know is rendered substantially more probable by such person's conduct.

(Emphasis added.) The physical injury of being shot is not "similar," for the purpose of transferring intent, to the mental injury of experiencing reasonable apprehension of being shot.

¶ 25 We are mindful of the point made in *Cantua–Ramirez* that our legislature replaced the phrase "same kind" of injury or harm in the Model Penal Code's version of this provision with "similar injury or harm." 149 Ariz. at 380, 718 P.2d at 1033. Nonetheless, we are not persuaded that apprehension of being shot is sufficiently "similar" to actually being shot for the purpose of this statute. Being placed in apprehension of being hit by a bullet involves no touching and is a mental or nervous system insult. Being hit by a bullet fired from a rifle is usually a severe physical injury. We therefore conclude that § 13–203(B)(2) is not applicable if Johnson did not intend to scare at least one of his victims. If Johnson fired his rifle intending to hit Officer D, without any intent to scare anyone, he may have been convicted of intentionally placing the bystanders in apprehension without ever having any intent to place anyone in apprehension.

### Reversible Error From The Transferred Intent Instruction

¶ 26 Although the transferred intent instruction given by the court was a correct statement of the law as far as it went, it was incomplete and therefore erroneous. *See supra* ¶ 10. An additional instruction should have been given to clarify when the jury could properly apply transferred intent. The court had an independent duty to provide the necessary clarification to allow the jury to correctly decide the case. *See State v. Avila,* 147 Ariz. at 337, 710 P.2d at 447. The jury may have been led to believe, erroneously, that Johnson's apparent intent to shoot Officer D could be transferred to support the bystander assault charges, resulting in John-

son's conviction without evidence of the required element of an intent to place a person in reasonable apprehension of imminent physical injury.

¶27 When an error has been made in the jury instructions, we consider whether the error was harmless. *State v. McKeon*, 201 Ariz. 571, 573, ¶9, 38 P.3d 1236, 1238 (App.2002). "Error is harmless if we can conclude beyond a reasonable doubt that it did not influence the verdict." *Id.* Because we cannot conclude beyond a reasonable doubt that the verdict was not based on an improper transfer of intent, we must reverse the conviction. *See State v. Amaya–Ruiz*, 166 Ariz. 152, 173, 800 P.2d 1260, 1281 (1990) (reversing a manslaughter conviction for the death of an unborn child because the application of transferred intent may have allowed defendant to be convicted without proof beyond a reasonable doubt of the requisite intent toward the unborn child).

## CONCLUSION

¶28 Therefore, we reverse Johnson's five convictions for the bystander assaults and remand for further proceedings.

LANKFORD and EHRLICH, JJ., concurring.