NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

RUBEN JAMES SUMPTER, *Appellant.*

No. 1 CA-CR 14-0467
FILED 12-8-2015

Appeal from the Superior Court in Maricopa County
No. CR2013-416241-001
The Honorable Virginia L. Richter, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jana Zinman
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Tennie B. Martin
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Jon W. Thompson joined.

---

**W I N T H R O P**, Judge:

¶1 Ruben James Sumpter ("Appellant") appeals his conviction for resisting arrest. Appellant argues the trial court abused its discretion by not providing the jury with a written copy of the preliminary jury instructions. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY[1]**

¶2 The State charged Appellant by indictment with two counts of aggravated assault, each a class five felony (Counts 1 and 2), and one count of resisting arrest, a class six felony (Count 3). The State later alleged Appellant had four prior felony convictions.

¶3 At trial, shortly before the court advised the jury of the preliminary jury instructions, defense counsel queried whether jurors would receive a written copy of those instructions. The following colloquy between counsel and the court ensued:

> THE COURT: I don't give copies of the preliminaries[.] I only give copies of [the] final [instructions].
>
> DEFENSE COUNSEL: I'm just requesting that they be given copies[,] but I understand the Court.
>
> THE COURT: Unfortunately[,] I make them listen to me read.
>
> DEFENSE COUNSEL: Your Honor, for the record if I just might ask the Court to state the reasons as to why [you are] not giving the jurors copies?

---

[1] We view the facts in the light most favorable to sustaining the verdict and resolve all reasonable inferences against Appellant. *See State v. Kiper*, 181 Ariz. 62, 64, 887 P.2d 592, 594 (App. 1994).

> THE COURT: I don't think they need copies of the preliminaries. I think what they need are the final instructions to take with them into the jury room. They need to learn to listen to what's going on and I think that kind of trains them to listen to the evidence.

The prosecutor then explained that she, too, preferred for the jury to have a written copy of the preliminary instructions "because we like them to be able to understand what the actual charges are, to be able to read the actual elements of it so they know what to listen for as each [o]fficer and each civilian is there. We think it's helpful to them to be able to reference that during the trial." The court noted the objection for the record, and subsequently read the charges and preliminary instructions to the jury, without providing the jury a written copy of those instructions.

¶4　　During the three-day trial, the State presented the testimony of four police officers. Appellant did not testify, but presented the testimony of one witness ("D.H."). After presentation of the evidence, the court provided jurors with a written copy of the final instructions before reading those instructions to the jury.

¶5　　The jury found Appellant not guilty of Counts 1 and 2, but guilty of Count 3, resisting arrest. After finding Appellant had four prior felony convictions, the trial court sentenced him to a presumptive term of 3.75 years' imprisonment.

¶6　　We have jurisdiction over Appellant's delayed notice of appeal. *See* Ariz. Const. art. 6, § 9; Ariz. Rev. Stat. §§ 12-120.21(A)(1), 13-4031, 13-4033(A).[2]

## ANALYSIS

¶7　　Appellant argues we must reverse his conviction because the trial court abused its discretion in declining counsels' request that the court provide the jury with a written copy of the preliminary jury instructions pursuant to Rule 21.3(d), Ariz. R. Crim. P. We decline to reverse.

¶8　　We review a trial court's decisions pertaining to jury instructions for an abuse of discretion. *See State v. Bolton*, 182 Ariz. 290, 309, 896 P.2d 830, 849 (1995); *State v. Forde*, 233 Ariz. 543, 566, ¶ 90, 315 P.3d 1200,

---

2　　We cite the current version of the applicable statutes because no revisions material to this decision have occurred since the date of the offense.

1223 (2014). "Abuse of discretion is 'an exercise of discretion which is manifestly unreasonable, exercised on untenable grounds or for untenable reasons.'" *State v. Wassenaar*, 215 Ariz. 565, 570, ¶ 11, 161 P.3d 608, 613 (App. 2007) (citations omitted).

**¶9** Rule 21.3(d), Ariz. R. Crim. P., provides as follows: "The court's preliminary and final instructions on the law shall be in written form and a copy of the instructions shall be furnished to each juror before being read by the court." Further, as Appellant notes, the Arizona Rules of Criminal Procedure "shall govern the procedure in all criminal proceedings in all courts within the State of Arizona." Ariz. R. Crim. P. 1.1. "The purpose of the rules of criminal procedure is to protect fundamental rights of the individual and to promote simplicity in procedure and the elimination of delay and unnecessary expense." *State ex rel. McDougall v. Mun. Court*, 160 Ariz. 324, 326, 772 P.2d 1177, 1179 (App. 1989) (citing Ariz. R. Crim. P. 1.2; *State v. Gomez*, 27 Ariz. App. 248, 553 P.2d 1233 (1976)).

**¶10** Appellant has not suggested what preliminary instruction the jurors needed in writing or how their failure to have that instruction or any of the preliminary instructions impacted the fairness of the proceedings. Further, Appellant does not argue that he was harmed by the trial court's alleged error; instead, he merely requests that we reverse his conviction as a "sanction" for the court's refusal to follow Rule 21.3(d). The language of Rule 21.3(d) is clear and mandatory. The trial court's decision to not follow the mandate of the rule was error. However, "[w]hen an error has been made in the jury instructions, we consider whether the error was harmless." *State v. Johnson*, 205 Ariz. 413, 421, ¶ 27, 72 P.3d 343, 351 (App. 2003) (citation omitted); *see also State v. Sullivan*, 205 Ariz. 285, 289, ¶ 19, 69 P.3d 1006, 1010 (App. 2003) (concluding that a trial court's deviation from the *Portillo* instruction[3] is subject to harmless error analysis); *cf. State v. White*, 160 Ariz. 24, 31-32, 770 P.2d 328, 335-36 (1989) (concluding that the trial court's omission of the final presumption of innocence instruction was "harmless," and therefore did not constitute fundamental error).

**¶11** "Error is harmless if we can conclude beyond a reasonable doubt that it did not influence the verdict." *Johnson*, 205 Ariz. at 421, ¶ 27, 72 P.3d at 351 (citation omitted); *see also State v. Williams*, 133 Ariz. 220, 225, 650 P.2d 1202, 1207 (1982) ("The test for determining harmless error is 'whether there was reasonable probability . . . that a verdict might have been different had the error not been committed.'" (citations omitted)); *accord State v. Lacy*, 187 Ariz. 340, 348-49, 929 P.2d 1288, 1296-97 (1996)

---

3       *See State v. Portillo*, 182 Ariz. 592, 596, 898 P.2d 970, 974 (1995).

(concluding that erroneously admitting evidence of an unrelated prior burglary was harmless error). The State bears the burden of proving beyond a reasonable doubt that an error was harmless. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 18, 115 P.3d 601, 607 (2005).

¶12 In this case, the court's error was harmless because no reasonable probability exists that the verdict would have been different had the court provided the jury with a written copy of the preliminary jury instructions. The trial in this case was short and uncomplicated, and the evidence presented at trial overwhelmingly supported Appellant's conviction for resisting arrest, as shown by the following facts elicited at trial: At approximately 5:15 a.m. on March 7, 2013, D.H. called 911 after discovering a man later identified as Appellant on her roof. Phoenix Police Sergeant Dupra, driving a fully-marked police vehicle and wearing his fully-marked police uniform—including a metal badge, nameplate, gun and belt, handcuffs, radio, taser, and decals—responded to the emergency call.

¶13 As his vehicle approached D.H.'s home, Sergeant Dupra observed a person (Appellant) matching the physical description provided by the 911 operator. Sergeant Dupra began to exit his patrol vehicle, identified himself as a Phoenix police sergeant, and asked to speak with Appellant.

¶14 Appellant, however, ran westbound down the street and into the yard of a residence, where he jumped the chain-link fence in front of that residence. Sergeant Dupra followed initially in his vehicle, and then got out and jumped over the fence in pursuit of Appellant. Appellant then picked up a metal lawn chair and threw it at the sergeant, striking his knees.

¶15 Officer Smoke, also dressed in a standard police uniform, arrived just before Appellant jumped the fence and ordered Appellant to stop running, but Appellant refused to comply. Officer Smoke followed Appellant into the yard and grabbed Appellant's right arm, but Appellant broke away. Appellant ran toward the residence, grabbed the doorknob of the metal security door with both hands, and began yanking on it.

¶16 Both Sergeant Dupra and Officer Smoke attempted to gain control of Appellant by grasping his arms at the front door. Appellant, however, ripped the hinges of the door from the frame of the house. According to the officers, Appellant began swinging the door back and forth at them, despite Officer Smoke telling him to "stop resisting" and ordering him to place his hands behind his back. Both officers testified they

5

were concerned for their safety after Appellant pulled the door off its hinges.

¶17 The officers eventually removed the door from Appellant's grasp, but were still unable to immediately control and handcuff him because his arms, elbows, and feet continued to flail aggressively, and he refused to comply with their commands. Eventually, however, the officers managed to get Appellant on the ground on his back. Appellant continued to be unwilling to comply, however, and violently flailed his arms, hands, and legs, "making it next to impossible to get a hold of him and get him in custody." Because the officers could not roll Appellant on his stomach to handcuff him, Officer Smoke deployed his taser.

¶18 Within seconds after Officer Smoke deployed the taser, however, Appellant continued to fight and flail his arms and legs. Officer Smoke ordered Appellant to stop resisting, but Appellant refused, and Officer Smoke activated the taser arc cycle a second time. After the taser stopped a second time, Appellant "again started flailing around" and acting aggressively, and Officer Smoke activated the taser a third time.

¶19 Officers Tomco and Jacks arrived at the scene. Officer Jacks observed Officer Smoke and Sergeant Dupra giving Appellant commands and attempting to take Appellant into custody, while Appellant refused to comply with the commands and physically resisted. As Officers Tomco and Jacks assisted in handcuffing Appellant, Appellant continued to physically resist by pulling his hands away as the officers tried to pull his arms behind his back and keep his arms out. Eventually, the four officers were able to handcuff Appellant.

¶20 After he was handcuffed, Appellant continued to be combative, kick his feet, and writhe on the ground, so the officers used a "Ripp restraint" (a cord used to secure one's feet) to prevent Appellant from kicking. Both Sergeant Dupra and Officer Smoke sustained cuts and scrapes during the struggle with Appellant.

¶21 Appellant's own witness, D.H., testified that on the day of the incident, she called 911, and when an officer arrived, Appellant became "frantic" and ran westbound down the street. D.H. observed police officers chasing Appellant and ordering him to stop, but Appellant failed to comply and jumped over a residential fence before falling on a table with chairs surrounding it. According to D.H., Appellant grabbed the residence's security door, and when the police tried to pull Appellant off the door, he tore the door off the house. D.H. "guess[ed]" that Appellant then fell to the

ground with the door on top of him, and one or more police officers on top of the door. D.H. claimed Appellant did not appear to be fighting the officers, but acknowledged she could not see Appellant after the screen door came down and while Appellant was on the ground. She also testified that she heard officers tell Appellant to put his hands behind his back before she heard Appellant being tased "like four times." D.H. stated that police officers then tied Appellant's legs and arms together.

¶22 Given the evidence presented at trial, no reasonable probability exists that the jury would have found Appellant not guilty of resisting arrest had it received a written copy of the preliminary instructions. Furthermore, not only did the trial court read the preliminary instructions to the jury, but the oral preliminary instructions provided the jury mirrored the written preliminary instructions not provided, and the instructions themselves were straightforward and almost completely duplicated in the final instructions, which were provided to the jury in both oral and written form. Additionally, as part of its preliminary instructions, the court instructed the jury that the final instructions "will control your deliberations" and that, "after all of the evidence is in[,] I will read and give you a copy of the final instructions[,] the rules of law you must follow in reaching your verdict." We presume the jurors followed the instructions given them. *See State v. LeBlanc*, 186 Ariz. 437, 439, 924 P.2d 441, 443 (1996). Given the foregoing, any error by the trial court was harmless beyond a reasonable doubt. *See Cleary v. State*, 942 P.2d 736, 750 (Okla. Crim. App. 1997) (concluding the trial court's failure to give the jury a written copy of a jury instruction was harmless error); *cf. People v. Seaton*, 28 P.3d 175, 220 (Cal. 2001) (recognizing that no constitutional right exists to have a physical copy of jury instructions with the jury during deliberations (citations omitted)).

## CONCLUSION

¶23 Appellant's conviction and sentence are affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: ama

7