NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee*,

*v.*

JOHN LEO MEYERS, *Appellant*.

No. 1 CA-CR 17-0210
FILED 2-27-2018

---

Appeal from the Superior Court in Coconino County
No. S0300CR201600750
S0300CR201601045
The Honorable Dan R. Slayton, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jason Lewis
*Counsel for Appellee*

Coconino County Public Defender's Office, Flagstaff
By Brad Bransky
*Counsel for Appellant*

_____

## MEMORANDUM DECISION

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Jennifer B. Campbell and Judge Paul J. McMurdie joined.

_____

**W I N T H R O P**, Presiding Judge:

**¶1**      John Leo Meyers ("Meyers") appeals his conviction and sentence for attempted second degree murder and aggravated assault.   For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**          This appeal arises from an incident that occurred in 2014 between Meyers and his roommate, Earl.  On June 20, 2014, Earl went for a run.  When he returned from his run, and began to change his clothes, he felt a stab to his back.  Earl turned, saw Meyers holding a knife, and yelled at him, but Meyers did not respond.

**¶3**          Earl attempted to leave the house, but Meyers blocked the exit.  Earl then drew his pocket knife and the two began to fight.  At one point, Earl disarmed Meyers, however, Earl tripped as he tried to exit the house.  In the meantime, Meyers recovered his knife and stabbed Earl in the head and back.  Eventually, Earl exited the house and ran to his neighbor for help.  The neighbor called 911 and waited with Earl for the ambulance to arrive.[1]

**¶4**          In his defense, Meyers testified that on the day of the stabbing, Earl accused him of stealing his money and marijuana.  Then, when Earl came back from his run, he hit Meyers, and Meyers drew his knife in self-defense.  The two began to fight, each with his own knife, and eventually Meyers told Earl to leave.  After Earl left, Meyers became scared because of what had happened and left.  Meyers immediately went to his employer's house, and his boss told him to contact the police.  Meyers instead fled to California.

_____

[1]      Earl was treated for six stab wounds:  three stab wounds to his head, one stab wound near his kidney, one stab wound to his chest, and one stab wound to his shoulder.

**¶5**        In 2016, approximately two years after the stabbing, Meyers turned himself in to the police.  Meyers was arrested and subsequently interviewed by a detective.  During the interview Meyers stated that he fled the state because he was afraid Earl "could be involved with Drug Dealers." On November 23, 2016, Meyers was indicted on one count of attempted second degree murder and two counts of aggravated assault.

**¶6**        Before trial, the State moved to preclude Meyers' statement to the detective that Meyers fled to California because he was afraid of Earl's possible drug connections, and to preclude Meyers from speculating "on the victim's associations or supposed drug dealing."

**¶7**        In response, Meyers argued that his statement to the detective should be admitted to explain why he fled to California.  The court granted the State's motion "to preclude that [specific] statement."   After the court granted the motion, however, the parties continued to debate exactly what the court had precluded:

> [The State]:  And Your Honor, I don't know if the court wants to address this now.  But given the context of the statements that were made in the defense interview, in the interview of the defendant by Detective [ ], I do have some concerns about I just want to make sure the defendant is clear, Mr. Meyers is clear about what he is not allowed to be saying about the victim if he chooses to testify, particularly improper character evidence.

> The Court:  The only thing I've heard preclusion on is that [Earl], he [Meyers] believed him to be involved with or he could be a drug dealer.

> …

> [The State]:  And there were some comments within our agreements, defendant made some comments in the interview about his feeling on the victim's character.  And we have agreed that it shouldn't come in.  And I just want the make sure that Mr. Meyers knows when he takes the stand, he shouldn't be saying comments about what he thinks of the victim.

> [Meyers' counsel]:  I'm not really sure that—I think that we made stipulations about his statement of the victim to [the detective].  I don't think there is any anything that would

prevent him on the stand from talking about his, the knowledge he had at the time of [Earl's] behavior and so on and so forth.

[The State]: Well, I'm glad we're bringing this up, then. . . . And I would just want Mr. Meyers admonished that he should not be making comments relating to that or related to prior violent behavior, assaultive behavior or . . . drug dealer associations or that type of statement.

The Court: Okay. All right. I understand your point. I understand Mr. [Meyers] modified it in that there has to be some room for I think the defendant to offer a characterization when they are offering or they are presenting a self-defense, if you will.

…

The Court: And so here's what I would propose. Mr. Meyers, there are certain statements that you made that are not going to be allowed. I've already ruled on those. I never know what the testimony is going to be and how it's going to be presented. I rely on the attorneys to craft their questions in such a way that they are designed not to elicit improper testimony that may result in a mistrial.

¶8　　　　The trial court then confirmed its ruling on the State's motion in its minute entry, which granted "the Motion to Preclude the Defendant's statement regarding drug dealers."

¶9　　　　At trial, the State argued that Meyers' flight was evidence of his guilt. Specifically, in its closing argument, the State argued that:

[Meyers] was well aware of what he did that night and well aware that it wasn't justified. It wasn't self-defense. He knew immediately that he was in big trouble. And that's why he ran. He didn't run because he was scared. . . . He was running to avoid the police, to avoid being caught because he knew he was in trouble. He knew he did something really stupid.

¶10　　　　In his defense, Meyers testified that he fled and never called the police because Earl had previously threatened and assaulted him and he did not think the police would listen to him because Meyers had a previous assault charge. At the close of trial, the court instructed the jury

that it could consider evidence of Meyers' running, but also that the jury could consider his reasons for running, and that running, by itself, did not prove that Meyers was guilty of the alleged crime.

¶11      The State also requested that the trial court instruct the jury on voluntary intoxication, to which Meyers objected, arguing the instruction would confuse the jury. The court granted the State's request after considering the evidence, which included a picture of Meyers' trash filled with eleven beer cans; testimony that Meyers bought a thirty pack of beer on the day of the stabbing; and Earl's testimony that Meyers had been drinking that day. The State additionally referenced Meyers' potential intoxication in its opening and closing arguments, arguing Meyers attacked Earl in a "drunken rage." After granting the State's request for a voluntary intoxication jury instruction, the court allowed Meyers to modify the proposed instruction and adopted Meyers' modified version for the final instruction.[2]

¶12      After deliberation, the jury found Meyers guilty on all counts. The court then sentenced Meyers to concurrent sentences of twelve years' imprisonment for count one, attempted second degree murder; seven years' imprisonment for count two, aggravated assault; and ten years' imprisonment for count three, aggravated assault.[3]

¶13      Meyers filed a timely notice of appeal. We have appellate jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9, and

---

[2]      The final voluntary intoxication instruction read: "[i]t is not a defense to any charged offense if the offense was committed due to temporary intoxication resulting from the voluntary consumption of alcohol."

[3]      At the sentencing hearing the trial court granted Meyers 185 days pre-incarceration credit, however, in its sentencing minute entry it granted Meyers 217 days pre-incarceration credit. Neither party has raised this issue on appeal. Generally, a court's oral statements at a hearing control over its written minute entry. *State v. James*, 239 Ariz. 367, 368, ¶ 7 (App. 2016). In this case, however, it is unclear whether either of the court's pre-incarceration credit calculations are correct. Without any cross-appeal from the State, we affirm the grant of 217 days of pre-incarceration credit. *See State v. Dawson*, 164 Ariz. 278, 282-83 (1990).

Arizona Revised Statutes sections 12-120.21(A)(1) (2016), 13-4031 (2010), and 13-4033(A) (2010).

## ANALYSIS

**¶14** On appeal, Meyers argues the trial court erred by precluding him from fully testifying about why he fled to California. Meyers additionally argues the court erred by providing a voluntary intoxication instruction to the jury. We address each issue in turn.

### I.    Preclusion of Evidence

**¶15** Meyers argues his potential testimony explaining that he fled to California because he was afraid of Earl's possible drug connections was necessary to support his self-defense claim and to rebut the State's argument that he fled because he was guilty. Meyers, however, fails to distinguish the trial court's ruling precluding the admission of his prior statement to the detective from his ability to fully testify at trial about the reason he fled to California.[4] Although Meyers conflates these issues, they are distinguishable, and the record does not support Meyers' contention that the court precluded him from testifying at trial that he fled to California because he was afraid of Earl's possible drug connections.

**¶16** We review a trial court's ruling to preclude certain evidence for an abuse of discretion. *State v. Davis*, 205 Ariz. 174, 178, ¶ 23 (App. 2002). A court abuses its discretion if its ruling is based on insubstantial evidence or an error of law. *State v. Cowles*, 207 Ariz. 8, 9, ¶ 3 (App. 2004) (citation omitted).[5] In determining whether the trial court abused its discretion we acknowledge that the United States Constitution guarantees defendants "a meaningful opportunity to present a complete defense." *State v. Foshay*, 239 Ariz. 271, 279, ¶ 36 (App. 2016) (quoting *State v. Machado*, 224 Ariz. 343, 351, ¶ 12 (App. 2010), *aff'd*, 226 Ariz. 281 (2011) (internal quotation omitted)). A defendant is deprived of the opportunity to present a complete defense if

---

[4]    The State also mischaracterizes the trial court's ruling as broadly precluding Meyers "from speculating that Earl had drug connections."

[5]    Even if a trial court abused its discretion in precluding certain evidence, its ruling will not be overturned if the error was harmless. *State v. Fish*, 222 Ariz. 109, 114, ¶ 8 (App. 2009) (finding an error is harmless if "the actual verdict rendered 'was surely unattributable to the error'" (quoting *State v. Anthony*, 218 Ariz. 439, 446, ¶ 39 (2008))).

he is unable to introduce evidence pertinent to an issue in his case. *Id.* (quoting *State v. Fleming*, 117 Ariz. 122, 125 (1977)).[6]

¶17 The record does not support Meyers' contention that the trial court abused its discretion in precluding his prior statement to the detective that Earl was possibly involved with drug dealers as hearsay. Nor does the record support Meyers' argument that preclusion of this statement prevented him from having a meaningful opportunity to present his defense to the underlying charges.

¶18 A defendant has a fundamental right to testify in his own defense. *See U.S. v. Pino-Noriega*, 189 F.3d 1089, 1094 (9th Cir. 1999). This right, however, does not trump applicable rules of evidence. *Id.* Thus, a court will generally preclude a defendant's prior exculpatory, self-serving statement as hearsay unless the statement qualifies under a hearsay exception. *State v. Barger*, 167 Ariz. 563, 566-67 (App. 1990). *See also State v. Wooten*, 193 Ariz. 357, 366, ¶ 47 (App. 1998) (finding a defendant's hearsay statement is admissible if it fits within a recognized exception to the hearsay rule). Meyers testified at length about his version of the events, and his belief that, at all times, he was acting in self-defense. Meyers' statement to the detective two years' later that he fled to California because he feared Earl's possible drug-dealing connections does not go to the issue of self-defense, but rather is an exculpatory statement because it attempts to retroactively justify the reason he left after the stabbing and the inference of guilt that arises from fleeing. Although Meyers argued the statement should be admitted to show his state of mind, the trial court ultimately granted the State's motion to preclude Meyers' statement. We find no abuse of discretion in precluding this self-serving pretrial statement, which if allowed by the court would have improperly bolstered Meyers' trial testimony. After precluding Meyers from testifying that he told the detective that he fled to California because of Earl's drug-dealing connections, the court informed Meyers and his counsel that he had the right to testify at trial as to why he left the state, to the extent permitted by the rules of evidence.

¶19 As noted, Meyers exercised his fundamental right to testify in his defense at trial, and consequently, his testimony was subject to reasonable limitations—such as the trial court precluding the admission of

---

[6] The State argues Meyers failed to raise this issue before the trial court, and thus, this issue is subject to fundamental error review. Meyers, however, objected to the court's preclusion ruling, which preserved this issue for a harmless error review on appeal.

prior out-of-court self-serving statements, which are inadmissible under the Arizona Rules of Evidence. *See* Ariz. R. Evid. 801(c), 802. Contrary to Meyers' argument on appeal, the court only precluded Meyers from improperly bolstering his testimony with the admission of his prior statement to the detective that he fled to California because of Earl's drug connections, and did not categorically preclude Meyers from testifying that he fled to California because he feared Earl's potential drug connections. Instead, the court reserved its ruling regarding the admission of Meyers' testimony on this issue subject to how the information was raised and presented at trial. Thus, Meyers could have testified that he fled to California because he feared Earl's drug connections if this testimony was otherwise admissible under the Arizona Rules of Evidence.

**¶20**        We cannot say, on this record, that the trial court abused its discretion in precluding Meyers' statement to the detective. Nor can we say, based on the court's ruling, that Meyers was prohibited from testifying that he fled to California because he was afraid of Earl's drug connections. Meyers chose to testify instead that he fled because of Earl's prior threats and assaultive behavior, and not because of concerns about Earl's potential drug connections. This decision was entirely within his control.[7]

## II.        *Voluntary Intoxication Jury Instruction*

**¶21**        On appeal, Meyers argues that the trial court abused its discretion by issuing a voluntary intoxication jury instruction because the instruction was confusing and irrelevant to Meyers' justification of self-defense.

**¶22**        We review the trial court's decision to grant a jury instruction for an abuse of discretion. *State v. Johnson*, 205 Ariz. 413, 417, ¶ 10 (App. 2003). A court may provide a jury instruction "on any theory reasonably supported by the evidence." *Id.* (citing *State v. Tschilar*, 200 Ariz. 427, 436, ¶ 36 (App. 2001)). We look to jury instructions as a whole to determine whether they have misled the jury, and we will not reverse a case if only an isolated portion of the jury instructions was misleading. *State v. Guerra*, 161 Ariz. 289, 294 (1989).

**¶23**        At trial evidence was admitted that Meyers had bought a thirty pack of beer and had been drinking on the night of the stabbing.

---

[7]        There is no offer of proof in the record to show that Meyers' potential testimony as to possible drug connections would have been anything other than pure speculation.

Additionally, there was photo evidence showing Meyers' trash filled with beer cans. From this, a jury could reasonably conclude that Meyers was intoxicated on the night of the stabbing. Even if other evidence tended to prove that Meyers was not intoxicated, there was sufficient evidence on which the court could give the voluntary intoxication jury instruction. Moreover, the court allowed Meyers to modify the proposed jury instruction to reflect his desired language while still accurately stating the law. Meyers, however, argues that even the modified instruction was improper because he did not raise an intoxication defense. In response, the State argues the voluntary intoxication jury instruction was necessary to help the State carry its burden of proving that Meyers committed a voluntary act—regardless of whether he was intoxicated—by stabbing Earl. We agree and find that the court did not abuse its discretion in instructing the jury on voluntary intoxication because the instruction was relevant to the State's theory and consistent with the admitted evidence.

**CONCLUSION**

¶24        Meyers' conviction and sentence are affirmed.

