NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

CHARLES F. GEORGE, JR., *Appellant.*

No. 1 CA-CR 18-0133
FILED 4-16-2019

Appeal from the Superior Court in Maricopa County
No. CR 2012-149359-001
The Honorable Annielaurie Van Wie, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Edward F. McGee
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Randall M. Howe joined.

---

**C A M P B E L L**, Judge:

¶1        Charles George, Jr., timely appeals his convictions and sentences for four counts of aggravated driving or actual physical control while under the influence of intoxicating liquor or drugs ("DUI"), all class 4 felonies. He argues the court erroneously gave the jury an instruction on flight. For the following reasons, we affirm.

## BACKGROUND

¶2        Following a jury trial, George was convicted of four counts of aggravated DUI. The State alleged George drove a vehicle while under the influence of intoxicating liquor and had a blood alcohol concentration ("BAC") of 0.08 or more in his body within two hours of driving, while his driver's license was suspended and after he had been convicted of a DUI within eighty-four months.

¶3        At trial, the State presented evidence that George was driving down a residential street when he hit a curb and lost control of his car before crashing into a lamp pole. A man witnessed the event from his bedroom window. He ran outside and approached the car. When he asked the driver if he was injured, George responded, "I've got to get out of here." George then started the car and tried to drive away. The witness opined that the car was "totaled"—no longer operational.

¶4        Another neighborhood man witnessed George trying to start the car. He told George to "sit tight" and took the key out of the ignition. George opened the car door, demanding the return of the key. The witness handed it back. George got out of the car and walked over to a greenbelt area. The men told George to wait because police were on their way, but he continued walking away.

¶5        Officer Host was the first officer to arrive. The witnesses told the officer that the driver of the car had walked away, heading into the greenbelt. Officer Host observed George in the greenbelt and yelled out for him to "stop and come back." George continued walking. Officer Host ran

after him and asked George to return to the car. George was not completely cooperative, so Officer Host increased the forcefulness of his verbal requests and eventually had to "put[] [his] hands on [George] and guid[e] him back on the scene." George was arrested shortly after the accident and taken to the hospital for medical treatment, where he later lost consciousness.

¶6            Officer Miyazato took over the investigation at the hospital. He obtained a search warrant and took a blood sample from George. An Arizona Department of Public Safety forensic scientist tested the blood sample and determined that George had a BAC of 0.285 approximately two hours after the crash.

¶7            Over George's objection, the court gave the jury a flight instruction that read as follows:

> In determining whether the State has proved the Defendant guilty beyond a reasonable doubt, you may consider any evidence of the Defendant's running away with all the other evidence in the case. You may also consider the Defendant's reasons for running. Running away after a crime has been committed does not by itself prove guilt.

During closing arguments, George argued that he went into the greenbelt area because he was confused from the impact of the accident; he further argued that his confusion was evidenced by the fact that he became unconscious in the hospital. The jury convicted George of all four counts, and the court sentenced him to a slightly aggravated term of 10.5 years in prison.

## DISCUSSION

¶8            On appeal, George argues giving the jury instruction on flight was in error because there was no evidence to support the notion that he ran or tried to conceal himself from law enforcement. We review the court's decision to give a jury instruction for an abuse of discretion. *State v. Johnson*, 205 Ariz. 413, 417, ¶ 10 (App. 2003). A party is entitled to a jury instruction on any theory if reasonably supported by the evidence. *Id.*

¶9            "A flight instruction should only be given if the State presents evidence of flight after a crime from which jurors can infer a defendant's consciousness of guilt." *State v. Solis*, 236 Ariz. 285, 286, ¶ 7 (App. 2014). A flight instruction is warranted if the evidence "supports a reasonable inference that the flight or attempted flight was open, such as the result of

an immediate pursuit." *State v. Smith*, 113 Ariz. 298, 300 (1976). A defendant does not have to run from police or the place of the crime for a flight instruction to be justified, *see State v. Clark*, 126 Ariz. 428, 434-35 (1980); however, because merely leaving the scene of a crime is not evidence of flight, *Smith*, 113 Ariz. at 300, a flight instruction is proper only if the defendant's "manner of leaving . . . reveal[s] a consciousness of guilt,"*Clark*, 126 Ariz. at 434. And the existence of an alternative explanation for the defendant's behavior does not render a flight instruction inappropriate so long as the evidence supports a consciousness of guilt. *State v. Hunter*, 136 Ariz. 45, 48-49 (1983).

¶10          At trial, George argued the evidence did not justify a flight instruction because he walked away from the car at a normal pace and did not run when Officer Host called for him to stop. George points to his confusion and eventual unconsciousness and hospitalization as plausible explanations for why he walked away.  George likens his conduct to that of the defendant in *State v. Wilson*, who did not leave the crime scene in haste or pursuit, but instead "went home and awaited the expected arrival of the police." 185 Ariz. 254, 257 (App. 1995) (holding that inclusion of a flight instruction was in error).

¶11          Sufficient evidence shows that George walked away from the car after crashing into the pole to avoid being caught by police. The witnesses testified George said, "I've got to get out of here," and attempted to back away from the pole. After George was told that the police were on their way, he walked away from the mangled car and into the greenbelt. Unlike the defendant in *Wilson*, who left before police arrived, George disregarded Officer Host's command to stop and return to the car. The jury was free to infer that this movement away from the scene of the accident reflected a consciousness of guilt. *See State v. Earby*, 136 Ariz. 246, 248 (App. 1983). George was free to argue his alternative theory of confusion and allow the jury to choose between the competing theories. *See Hunter*, 136 Ariz. at 49. It merely created a fact question for the jury to decide. Consequently, the court did not abuse its discretion by giving the flight instruction.

**CONCLUSION**

¶12       We affirm George's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:  AA