526 P.2d 736

The STATE of Arizona, Appellee,

v.

Kerry Glenn PRICE et al., Appellants.

No. 2899.

Supreme Court of Arizona,
In Banc.

Sept. 25, 1974.

198

198

Gary K. Nelson, Former Atty. Gen., N. Warner Lee, Atty. Gen., by R. Wayne Ford, Asst. Atty. Gen., Phoenix, for appellee.

Edward N. Hendricksen, Yuma, for appellant Price.

CAMERON, Vice Chief Justice.

The defendant Price appeals from jury verdicts and judgments of guilt to the crimes of unlawful sale of heroin, § 36-1002.02 A.R.S.; possession of marijuana (two counts), § 36-1002.05 A.R.S.; and assault with intent to commit murder while armed with a gun, § 13-248(B) A.R.S. He was sentenced to fifteen to twenty years for assault with intent to commit murder, two to four years each for the two counts of possession of marijuana, and eight to fifteen years for the sale of heroin.

Price raises three issues on appeal:

1. Was the evidence sufficient to sustain a guilty verdict of sale of narcotics?

2. Did the trial court err in denying defendant's motion in limine to prevent certain hearsay testimony from being admitted?

3. Were the prosecutor's comments in summation so prejudicial as to deny Price a fair trial?

The defendant and three others were arrested by law enforcement officers following an attempted sale to undercover narcotics agents and a shoot-out in which defendant Price wounded an undercover agent. One of the defendants, Baca, as a result of a bargain, entered a plea of guilty to the crime of sale of narcotic drugs and the other charges were dismissed. Defendant Price along with codefendants Barrett and Moccia were jointly tried.

The evidence indicates that on the 27th of August 1973 Robert Wadman, a federal narcotics officer, met with Richard Anthony Barrett to discuss the possible purchase of narcotics. Defendant Price was not present at this meeting. Barrett told Wadman that he, Barrett, could provide narcotics to Wadman and it was agreed that on the next day Wadman would meet with Barrett at the trailer house where Barrett and the defendant Price were living and where a quantity of cocaine would be available for inspection and purchase. Barrett warned Wadman to be careful to knock and wait to be admitted because he, Barrett, had a bodyguard. The bodyguard was evidently Price. Wadman and other agents quietly surrounded the trailer and Wadman went into the trailer and negotiated a sale with Barrett. At this time Wadman and Barrett remained in the living room of the trailer and the codefendants Baca, Moccia and Price remained in the kitchen which was curtained off from the living room portion of the trailer. After a discussion at which time it became apparent that cocaine was not obtainable, but that they had some heroin to sell, Barrett went back to the kitchen area and obtained some heroin for Wadman to inspect. Wadman testified that he heard discussion from the kitchen area concerning "the ounce" or "get the ounce." In any event, Barrett returned with an ounce of heroin for Wadman's inspection. After the agreement had been made on the transaction, Wadman and Barrett went outside to Wadman's automobile where the money to purchase the heroin was located. Wadman drew his gun and announced in a loud voice that he was a federal agent and they were under arrest. Barrett fell to the ground and put his hands over his head

while the defendant Price appeared in the doorway of the trailer with a revolver, and after an exchange of gunfire wounded Wadman. Immediately after the shooting Baca and Moccia ran out of the door of the trailer.

At the trial the defendant Price testified he was sitting at the kitchen table when he heard the shots outside. Price picked up a gun and looked out the door and saw officers with guns pointing at Barrett. Price testified that he fired in defense of Barrett.

### DOES THE EVIDENCE SUPPORT A CONVICTION OF PRICE FOR SALE OF HEROIN?

Defendant contends that "viewing the evidence in the light most favorable to the State, the most that can be said is that appellant Price was present at the place where the crime of the sale of heroin was being committed." We disagree. We think the evidence showed much more. Our statute states:

"§ 13–139. Principals

"All persons concerned in the commission of a crime whether it is a felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission, * * * are principals in any crime so committed."

And we have stated:

"Aiding and abetting means simply to assist in the commission of an act, either by active participation in it or in some manner advising or encouraging it. (citations omitted) Aiding and abetting contemplates some positive act in aid of the commission of the offense; an active force physical or moral joined with that of the perpetrator in producing it. The aider or abettor must stand in the same relation to the crime as the criminal, approach it from the same angle, touch it at the same point and possess criminal intent. (citations omitted)." State v.

Bearden, 99 Ariz. 1, 3, 405 P.2d 885, 886 (1965).

In the instant case, the sale of narcotics occurred in the residence of the defendant which he shared with the codefendant Barrett, the person who negotiated the sale.

The defendant was in the kitchen of the trailer when the negotiations for the sale took place and was in the kitchen when the codefendant Barrett came back for the heroin. When they arrested the codefendant Barrett defendant Price came out to protect Barrett and gunfire was exchanged.

The court properly instructed the jury as to aiding and abetting as follows:

"* * * The term aiding and abetting means simply that the aider or abettor must assist in the commission of an act constituting the offense, either by active participation in it or in some manner advising or encouraging it, and must stand in the same relation to the crime as the criminal, must approach it from the same angle and touch it at the same points and possess a criminal intent."

We believe there was sufficient evidence from which the jury could find that the defendant Price aided and abetted the codefendant Barrett in the sale of the heroin and was therefore a principal. §§ 13–138 and 13–139 A.R.S.

### DID THE TRIAL COURT ERR IN DENYING THE MOTION IN LIMINE?

Prior to the trial, the defendant made a motion in limine to exclude certain statements by the narcotics agents that Barrett had implicated Price. The court ruled that the prosecutor could not introduce Barrett's statements that "Kerry [Price] was in the narcotics business with [him]" or that Kerry Price was a bodyguard for Barrett.

At the trial the following transpired during the examination of Agent Land:

"Q Was there anything else involved in your plan that you can recall at this time?

"A Well, at that time we were concerned with the fact that one of the subjects—Rick had stated earlier that there was a *bodyguard* at the house trailer and he would—[emphasis supplied]

"Mr. Hendricksen: I would like to object. This is hearsay, double hearsay and I move that it be stricken from the record.

"The Court: Yes. The objection will be sustained."

Later when Agent Wadman testified the following transpired:

"Q Will you describe to us, Officer Wadman, in as much detail as you can what happened at that meeting between you and the person who was introduced to you as Rick? What was said between you and what took place and in as much detail as you can recall.

"Mr. Hendricksen: I object to the form of the question inasmuch as we are likely to get into some difficult hearsay problems here.

"The Court: No, the objection will be overruled. He may answer.

"The Witness: The meeting took place outside the vehicle close to the street which would be the area near the right front fender of the vehicle that I described. At this time Mr. Barrett explained to me that he was able to supply an ounce quantity of cocaine; that he wanted $1,000.00 for the ounce of cocaine; that there would be a period of 24 hours before he could obtain the narcotic and he explained to me the circumstances surrounding the 24 hour delay and advised me that he didn't have the narcotics at that time. He explained to me that he was—he had guns, stolen guns and was taking them to Mexicali to obtain narcotics and that the 24-hour period was necessary in that he had to find an opportune time to cross the narcotics back into the United States. This conversation also involved a situation where he

explained to me that if I returned to the trailer to be sure to knock loud, *that there were guns in the trailer and that Kerry was there.* [Emphasis added]

"Mr. Hendricksen: I object. This is hearsay on hearsay in addition to the violation of the confrontation clause.

"The Court: The objection will be overruled. Proceed.

"The Witness: This conversation involved a situation where he didn't want me to just enter the trailer. He said to be sure to knock and to wait because there was a—they had had problems there in the past and that if I just walked in that something would happen, and I was—from the way he stated it I felt it would be something violent that would happen. The conversation also described an individual by the name of Sonny and also Mr. Barrett had named a fellow by the name of Greg; that these individuals were with him or involved with him in the narcotic trafficking activities."

Since Barrett was also charged with assault with intent to commit murder, this testimony was admissible against Barrett, and therefore admissible in the trial as long as there was no denial of the right to confrontation by Price. Since the codefendant Barrett testified in his own behalf and was subject to cross-examination by the defendant Price, we find no denial of the right to confrontation. California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L. Ed.2d 489 (1970); Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L. Ed.2d 476 (1968).

## WAS THE DEFENDANT DENIED A FAIR TRIAL?

Defendant Price alleges that the comments made by the prosecutor in his summation were so prejudicial as to deny the defendant Price a fair trial.

It is the contention of the defendant that in his closing argument the

County Attorney referred to matters not in evidence and it is true that we have stated:

"But, we have also made it quite clear that the arguments must be based on facts which the jury is entitled to find from the evidence and not on extraneous matters that were not or could not be received in evidence." State v. Neil, 102 Ariz. 299, 300, 428 P.2d 676, 677 (1967).

A prosecutor, however, may argue reasonable inferences from the evidence. A reading of the closing argument of the prosecutor indicates that he was careful to point out:

" * * * What I say to you during this argument, during my talk with you is not evidence in this matter. The only evidence that you have heard is what you have heard from the witness stand and the exhibits that are in evidence, and if I have stated some fact and you heard it differently or you have heard it differently from a witness, please disregard my statement of the fact and follow what you heard from the witness stand; and if I misstate some point of law to you during the course of my argument, please disregard my statement of the law also and follow it as you hear it from the Court."

Also, the trial court instructed the jury as follows:

"While arguments are not evidence counsel may argue reasonable inferences from the evidence. If any comment of counsel has no basis in the evidence you are to disregard that comment."

While there may have been some misstatements of fact they appear to be inadvertent and not of such magnitude as to be prejudicial. We find no error.

Judgments affirmed.

HAYS, C. J., and STRUCKMEYER, LOCKWOOD and HOLOHAN, JJ., concur.